IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CARVEL RICE** | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 01-5602 |
| | : | |
| **DONALD T. VAUGHN, et al.** | : | |

**MEMORANDUM AND ORDER**

**Kauffman, J.**                                                                                          **October 25, 2006**

      Now before the Court is the pro se Petition of Carvel Rice ("Petitioner") for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Petitioner is currently incarcerated in the State Correctional Institution at Graterford, Pennsylvania. For the reasons that follow, the Petition will be denied.

**I. PROCEDURAL HISTORY**

      On December 2, 1991, a jury sitting in the Court of Common Pleas of Philadelphia County convicted Petitioner of second-degree (felony) murder, criminal conspiracy, possession of an instrument of crime, and three counts of robbery. After denying Petitioner's post-verdict motions, the Honorable William Mazzola sentenced Petitioner to an aggregate term of life imprisonment. Petitioner appealed to the Superior Court of Pennsylvania, which affirmed the judgment and sentence. See Commonwealth v. Rice, 673 A.2d 404 (Pa. Super. 1995) (table). The Pennsylvania Supreme Court denied Petitioner's application for allocatur on April 11, 1996. See Commonwealth v. Rice, 675 A.2d 1246 (Pa. 1996) (table).

      On April 14, 1997, Petitioner filed a pro se petition under the Pennsylvania Post

Conviction Relief Act ("PCRA"), 42 Pa. C.S. § 9541, et seq.  Paul J. Hetznecker, Esq. was appointed Petitioner's counsel and subsequently filed an amended petition.  The PCRA court denied relief on May 13, 1999.  Petitioner filed a timely appeal of the denial of PCRA relief to the Pennsylvania Superior Court on June 8, 1999.  The Superior Court affirmed the order of the PCRA court on March 23, 2001, finding all of Petitioner's claims waived.  See Commonwealth v. Rice, 777 A.2d 508 (Pa. Super. 2001) (table).  The Supreme Court of Pennsylvania denied allocatur on September 24, 2001.  See Commonwealth v. Rice, 786 A.2d 987 (Pa. 2001) (table).

Petitioner filed the instant Petition on November 6, 2001. In the Petition, he asserts the following claims: (1) trial counsel was ineffective because he failed to question eyewitnesses regarding an alleged benefit received from the Commonwealth; (2) trial counsel was ineffective because he failed to request a jury instruction regarding the alleged benefit received by the eyewitnesses; (3) trial counsel was ineffective because he failed to request a cautionary jury instruction regarding the eyewitness testimony; (4) the trial court erred by failing to suppress Petitioner's allegedly coerced confession; (5) the trial court erred by failing to suppress a confession obtained while Petitioner was being held on unrelated charges; (6) the trial court erred by not granting a mistrial based on the prosecutor's remarks regarding petitioner's failure to call his sister to testify; (7) the evidence was insufficient to support the guilty verdicts; and (8) the convictions were against the weight of the evidence.

The Court designated United States Magistrate Judge Charles B. Smith to submit a Report and Recommendation.[1]  Magistrate Judge Smith concluded that the Court should deny the Petition.  Because Petitioner has objected to the Magistrate Judge's Report and Recommendation

---

[1] See 28 U.S.C. § 636(b)(1)(B); Local R. Civ. P. 72.1(I)(b).

in its entirety, the Court must "make a de novo determination ...." 28 U.S.C. § 636(b)(1)(C). Having reviewed de novo the Report and Recommendation and Petitioner's Objections thereto, the Court will approve and adopt the Report and Recommendation.

## II.    LEGAL STANDARD

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2241 et seq., which places substantive limitations on the collateral relief available in federal court. Section 2254(d) provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added). A state court ruling is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court decision is an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal rule from [the Supreme] Court's cases, but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407. When making the "unreasonable application" inquiry, the federal habeas court should ask "whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. A state court's

-3-

decision is "objectively unreasonable" when it "'resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.'" Hackett v. Price, 381 F.3d 281, 287 (3d Cir. 2004) (quoting Werts v. Vaughn, 228 F.3d 178, 196 (3d Cir. 2000)).

AEDPA also requires deference to state court factual findings: "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III. ANALYSIS

### A. Claims Regarding Ineffective Assistance of Counsel

#### 1. Standard of Review

The Sixth Amendment of the United States Constitution establishes the right to effective assistance of counsel. In order to demonstrate a Sixth Amendment violation, Petitioner must show (1) that his "counsel's performance was deficient" and (2) that the deficient performance prejudiced him. Strickland v. Washington, 466 U.S. 668, 687 (1984).

Petitioner's burden under the first prong is to show that his counsel's representation fell below an "objective standard of reasonableness." Id. The Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689. Under the second prong of the Strickland test, the question is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at

694.

The Philadelphia Court of Common Pleas considered and rejected the ineffective assistance claims Petitioner asserted in his 1925(b) Statement.[2]  In doing so, it applied the Pennsylvania standard for such claims, which is the functional equivalent of the Strickland test. See Rompilla v. Horn, 355 F.3d 233, 249 (3d Cir. 2004) (rev'd on other grounds); Commonwealth v. Pierce, 527 A.2d 973 (Pa. 1987) (holding that the Pennsylvania test for ineffective assistance of counsel is equivalent to Strickland).  The Superior Court affirmed the decision of the Court of Common Pleas, finding that Judge Mazzola's opinion "thoroughly and properly disposes" of Petitioner's claims.  Accordingly, the Court must determine whether the Superior Court's denial of Petitioner's ineffective assistance claims amounted to an unreasonable application of clearly established federal law.  Williams, 529 U.S. at 409.

### 2. Claim Regarding Ineffective Assistance of Counsel for Failure to Question Eyewitnesses About the Alleged "Benefit" Received from the Commonwealth

Petitioner's first Sixth Amendment claim is that his counsel's questioning of eyewitnesses to the crime was deficient.  Petitioner asserts that the two eyewitnesses, Theodore Vicidomini and Norman Williams (collectively,"eyewitnesses"), initially identified his co-defendant, Eric Thompson, as the shooter, but that they changed their statements after Thompson admitted his involvement and identified Petitioner as the shooter.  Petitioner claims that the

---

[2]   Pennsylvania Rule of Appellate Procedure 1925(b) provides that: "[t]he lower court forthwith may enter an order directing the appellant to file of record in the lower court and serve on the trial judge a concise statement of the matters complained of on appeal no later than 14 days after entry of such order.  A failure to comply with such direction may be considered by the appellate court as a waiver of all objections to the order, ruling or other matter complained of."

eyewitnesses were motivated to change their statements because of an unwritten immunity agreement with the prosecution which gave them the "benefit" of not being charged with narcotics-related offenses arising out of their attempt to purchase drugs from Petitioner and Thompson. Petitioner asserts that knowledge of this alleged "benefit" could have led the jury to question Petitioner's real involvement in the crimes, and therefore, that his counsel was ineffective in failing to question the eyewitnesses about it.

Contrary to Petitioner's assertions, however, there is no evidence that the two eyewitnesses received any "benefit" from the prosecution in exchange for their testimony. As Respondent explains, the eyewitnesses were not charged with drug offenses because (1) the parties never reached an agreement regarding the sale and purchase of marijuana which would be necessary to charge the eyewitnesses with conspiracy to purchase marijuana, and (2) no drugs were found at the scene. Resp. to Pet. at 13. Thus, the eyewitnesses would not have been charged with drug offenses regardless of their level of cooperation with the prosecution because there was insufficient evidence against them. Accordingly, the eyewitnesses did not receive any "benefit" in exchange for their cooperation.

Since neither eyewitness received a "benefit" in exchange for his testimony, counsel's failure to question them about a "benefit" does not satisfy either part of the <u>Strickland</u> test. Trial counsel's decision not to question the eyewitnesses about a "benefit" that never existed was not objectively unreasonable under the first part of <u>Strickland</u>. Under the second part of the test, the outcome of the proceeding likely would not have been any different had counsel questioned the eyewitnesses about an alleged "benefit" since it never existed. Moreover, even if counsel had questioned the eyewitnesses about a possible "benefit," the prosecution had substantial additional

evidence against Petitioner to support the conviction, such as Thompson's statement and Petitioner's confession to the crimes.  Accordingly, the Court rejects Petitioner's first ineffective assistance claim.

> 3. **Claim Regarding Ineffective Assistance of Counsel for Failure to Request Jury Instruction About the Alleged "Benefit" Eyewitnesses Received from the Commonwealth**

Petitioner's second Sixth Amendment claim is similar to his first in that he contends his counsel was ineffective for failing to request a jury instruction about the alleged "benefit" the two eyewitnesses received.  As discussed above, Petitioner has not demonstrated that an alleged "benefit" ever existed.

> 4. **Claim Regarding Ineffective Assistance of Counsel for Failure to Request a Cautionary Jury Instruction About the Reliability of the Eyewitness Testimony**

Petitioner's third Sixth Amendment claim is that his trial counsel was ineffective for failing to request a cautionary jury instruction about the reliability of the eyewitness testimony of Williams and Vicidomini.  As Magistrate Judge Smith noted in his Report and Recommendation, the standard in Pennsylvania for instructing a jury about identification evidence is set forth in Commonwealth v. Kloiber, 106 A.2d 820 (Pa. 1954):

> Where the opportunity for positive identification is good and the witness is positive in his identification and his identification is not weakened by prior failure to identify, but remains, even after cross examination, positive and unqualified, the testimony as to identification need not be received with caution – indeed the cases say that 'his positive testimony as to identity may be treated as the statement of a fact.'

Kloiber at 826 (citing Commonwealth v. Ricci, 54 A.2d 51, 52 (Pa. Super. Ct. 1947); Commonwealth v. Sharpe, 10 A.2d 120 (Pa. Super. Ct. 1939)).  However, with respect to the

identification of an assailant:

> [W]here the witness is not in a position to clearly observe the <u>assailant</u>, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify defendant on one or more prior occasions, the accuracy of the identification is so doubtful that the court should warn the jury that the testimony as to identity should be received with caution.

<u>Id.</u> at 826-27 (emphasis added). As Magistrate Judge Smith noted, the Court's instruction providing the jury with a warning refers explicitly to situations involving the identification of an assailant.

In the instant case, Williams and Vicidomini originally identified only Thompson in connection with the robbery and shooting, but later amended their testimony to indicate that Thompson was not the sole participant in the crimes. Petitioner himself points out that "neither of the Commonwealth's eyewitnesses Norman Williams nor Teddy Vicidomini identified the petitioner as an individual involved in this case." Objections at 12. Instead, Williams and Vicidomini merely established that Thompson did not act alone. Petitioner's own confession, in conjunction with Thompson's statement, were the evidentiary bases for the identification of Petitioner as the shooter. Accordingly, a <u>Kloiber</u> charge was not required regarding the testimony of Williams and Vicidomini since they did not identify Petitioner as the assailant.

The <u>Strickland</u> test is not satisfied where counsel fails to pursue meritless claims. See <u>Martinez v. Chesney</u>, 1999 WL 722818, at *4 (E.D. Pa. Sept. 15, 1999). Since the eyewitnesses' testimony did not require a <u>Kloiber</u> charge, it would have been meritless for Petitioner's counsel to request such an instruction. Accordingly, counsel's failure to request such an instruction does not amount to ineffective assistance.

### B.     Claim Regarding Failure to Suppress Allegedly Coerced Confession Claim

Petitioner's fourth claim is that the suppression court erred by not suppressing his written confession which he contends was coerced. Specifically, Petitioner alleges that he was taken involuntarily from County Prison to the police department for questioning, that the written words contained in the statement were not his but rather those of a police officer, and that even though he signed the written statement, he has never "acknowledged the accuracy of the writing nor conceded that the statement was correct." Objections at 13.

When determining the voluntariness of a confession, the Court must "consider the effect that the totality of the circumstances had upon the will of the defendant." Miller v. Fenton, 796 F.2d 598, 604 (3d Cir. 1986) (citations omitted). An involuntary confession may result from psychological as well as physical coercion, but it is generally recognized that police may use some psychological tactics in order to elicit a statement from a suspect. Id. at 604, 605. "Although at trial level the burden is on the government to establish, by a preponderance of the evidence, that a challenged confession was voluntary ... on collateral review, the habeas corpus petitioner must prove involuntariness by a preponderance of the evidence." Id. at 604 (citations omitted).

The Court must accept the factual findings of the trial court regarding the voluntariness of Petitioner's statement unless he rebuts them by clear and convincing evidence. 28 U.S.C. § 2254(e). On appeal, the Pennsylvania Superior Court adopted the trial court's findings that:

> [Petitioner] was alert and responsive during the interview, he was
> not threatened by the police and no promises were made to him
> during the interview in an effort to obtain a statement. Moreover
> the defendant was advised of his constitutional rights which he
> waived, and at no time did he exercise his right to remain silent or

>his right to counsel. The statement was knowingly, intelligently
>and voluntarily given.

Commonwealth v. Rice, 673 A.2d 404 (Pa. Super. Ct. 1995) (adopting Commonwealth v. Rice, Nos. 1516-1528 (Pa. Ct. Common Pleas June 2, 1995), at 10). The trial court reached these findings after weighing the competing statements of Petitioner and Police Detective Bentham who testified that Petitioner made his confession voluntarily. Giving due deference to the trial court's findings regarding the competing statements, the Court finds that Petitioner has not demonstrated by clear and convincing evidence that these findings were erroneous. Accordingly, Petitioner's claim fails because he has not established, by a preponderance of the evidence, that his confession was coerced.

    **C.    Claim Regarding Failure to Suppress Petitioner's Written Confession Because He Was Interrogated While Allegedly Being Held for Unrelated Charges**

Petitioner's next claim is that his confession should have been suppressed because it was obtained following a September 8, 1990 arrest on unrelated charges and outside the presence of the attorney assigned to represent him in the instant case. Petitioner maintains that while he was detained on unrelated charges, he was questioned regarding the instant case in the presence of an attorney, but that the attorney present was not the attorney appointed to represent him in this case.

The United States Supreme Court has held that under the guidelines laid out in Miranda v. Arizona, 384 U.S. 436, 444 (1966), once an individual invokes his right to counsel, there can be no further police questioning of that individual without counsel present unless initiated by the individual. See Edwards v. Arizona, 451 U.S. 477, 482, reh'g denied, 452 U.S. 973 (1981). The

Supreme Court has extended this protection to prohibit police-initiated interrogations regarding any offenses after a suspect has requested counsel with respect to one offense.  See Arizona v. Roberson, 486 U.S. 675, 678 (1988).  However, if a suspect invokes his right to silence instead of his right to counsel, he may be questioned regarding an offense unrelated to the offense about which he is being interrogated if he is read his Miranda rights first.  See Michigan v. Mosley, 423 U.S. 96, 106-107 (1975).

After reviewing the record, the Court finds that the Superior Court's decision regarding Petitioner's claim was not contrary to this established Supreme Court precedent, nor was it an unreasonable application of federal law.  The Superior Court, adopting the trial court's opinion, denied Petitioner's claim, relying on Commonwealth v. Edmiston, 634 A.2d 1088 (Pa. 1993), overruled on other grounds Commonwealth v. Freeman, 827 A.2d 385 (Pa. 2003).  In Edmiston, the Pennsylvania Supreme Court held that a suspect who has not invoked his Fifth Amendment right to counsel while in custody on one set of charges may be questioned regarding unrelated charges.  See Edmiston, 827 A.2d at 1093.

As in the Edmiston case, the trial court in the instant case found that Petitioner "at no time, requested the assistance of counsel" after receiving his Miranda warnings.  Commonwealth v. Rice, Nos. 1516-1528 (Pa. Ct. Common Pleas June 2, 1995), at 11.  Moreover, Petitioner does not allege in his Objections that he requested counsel prior to being questioned.  Accordingly, the Supreme Court's holding in Edwards does not apply, and Petitioner is not entitled to habeas relief on this ground.

### D. Claim Regarding Failure to Grant a Mistrial Over the Prosecutor's Reference to Petitioner's Failure to Call His Sister As a Witness at Trial

Petitioner next claims that the trial court erred in denying his motion for a mistrial based on the prosecutor's reference to his decision not to call his sister, Monica Rice, to testify at trial. He maintains that the prosecution intentionally implied during closing arguments that Petitioner's sister did not take the stand because her testimony would have damaged his case. Since the burden of proof at trial rests with the prosecution, Petitioner contends that the prosecution's reference was an impermissible shift of the burden of proof to the defense. Objections at 29-30.

Under Supreme Court precedent, neither the prosecution nor the court may comment on a defendant's failure to testify at trial. Griffin v. California, 380 U.S. 609, 615, reh'g denied, 381 U.S. 957 (1965). However, "[i]t is perfectly proper to comment on the failure of the defense to call a potentially helpful witness, at least where ... the comment could not be construed as a comment on the failure of the defendant to testify," United States v. Keller, 512 F.2d 182, 186 (3d Cir. 1975).

In the instant case, the Superior Court affirmed the trial court's denial of Petitioner's motion for a mistrial. The trial court, examining the record, explained that the testimony of Petitioner's sister had exculpatory value in that she could have refuted a portion of Petitioner's confession in which he told the police that someone informed his sister that he shot someone. The trial court also found it "peculiar given the seriousness of the charges" that she did not testify and therefore deemed the prosecutor's remarks appropriate. Commonwealth v. Rice, Nos. 1516-1528 (Pa. Ct. Common Pleas June 2, 1995), at 13. Moreover, the trial court also determined that even if the remarks were improper, Petitioner would not be entitled to relief because the remarks "were not so prejudicial so as to deprive [Petitioner] of a fair trial." Id.

The Court does not find the Superior Court's holding to be contrary to or an unreasonable application of federal law.  Petitioner's sister was a "potentially helpful witness" in that she could have refuted damaging statements that Petitioner himself made.  Moreover, nothing in the record indicates that the prosecution's statements regarding Ms. Rice's absence could be construed as a comment on Petitioner's failure to testify.  Therefore, Petitioner is not entitled to relief on this claim.

E.    **Claim Regarding Insufficiency of Evidence to Support the Convictions**

Petitioner's seventh claim is that "the Commonwealth's evidence was so unreliable, contradictory and inconsistent as to make [any] verdict based thereon the result of conjecture."  See Objections at 32.  Specifically, Petitioner asserts that the only evidence placing him at the crime scene was his own allegedly coerced confession and that neither of the two eyewitnesses identified him as the shooter.  See id. at 32-33.[3]

Petitioner challenged the sufficiency of the evidence presented against him at trial on direct appeal to the Pennsylvania Superior Court.  See Commonwealth v. Rice, 673 A.2d 404 (Pa. Super. Ct. 1995) (adopting Commonwealth v. Rice, Nos. 1516-1528 (Pa. Ct. Common Pleas June 2, 1995)).  To that extent, his claim has been "adjudicated on the merits in State court proceedings," and must be denied unless Petitioner can show that the Superior Court's decision either was "contrary to, or involved an unreasonable application of, clearly established federal law."  28 U.S.C. § 2254(d).

The United States Supreme Court set out the test for whether a jury's guilty verdict was

---

[3]    Petitioner's argument fails to address Thompson's testimony identifying Petitioner as the shooter.

sufficiently supported by the evidence in Jackson v. Virginia, 443 U.S. 307 (1979): "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (emphasis in original). If the reviewing court answers that question in the negative, a denial of due process has taken place.

As discussed above, the Superior Court affirmed the trial court's conviction on appeal, and found that Petitioner's confession was not coerced. Since this Court finds that Petitioner has not demonstrated that his confession was involuntary, the Court also finds that the conviction was sufficiently supported by the evidence. In light of Petitioner's own confession and his co-defendant Thompson's identification of him as the shooter, a denial of due process has not taken place because a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

    **F.**   **Claim Regarding Conviction Being Against the Weight of the Evidence**

Petitioner's final allegation is that his convictions were against the weight of the evidence. Petitioner asserts that his convictions were based primarily on his confession, which he alleges should have been suppressed, and that the Commonwealth did not present other evidence linking him to the crimes. See Objections at 37-38. In support of his allegation, Petitioner cites caselaw holding that even when the evidence may be legally sufficient to support a guilty verdict, a new trial may be granted if the verdict is deemed to be against the weight of the evidence. See id. at 36. However, the cases cited by Petitioner are inapposite because they do not address the standard of review that governs federal habeas courts.

Federal habeas courts do not have the power to grant habeas relief merely because they

find a state conviction to be against the weight of the evidence.  See Harmon v. McCulloch, 2000 WL 804431, at *3 (E.D. Pa. June 22, 2000) (Petitioner's "claim that the trial court decision was against the weight of the evidence is not a cognizable basis for habeas relief").  Rather, federal habeas courts are governed by 28 U.S.C. §2254(d) which provides that habeas relief may be granted if state court proceedings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding."  Accordingly, Petitioner's final claim is not a basis for habeas relief.

**IV. CONCLUSION**

For the foregoing reasons, Petitioner's claims for habeas relief are without merit.  Accordingly, his Petition will be denied and dismissed.  Because Petitioner has not made the requisite showing of the denial of a constitutional right, a certificate of appealability should not issue.  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CARVEL RICE** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 01-5602** |
| | : | |
| **DONALD T. VAUGHN, et al.** | : | |

### ORDER

**AND NOW**, this 25th day of October, 2006, upon consideration of the Report and Recommendation of United States Magistrate Judge Charles B. Smith (docket no. 15) and Petitioner's Objections thereto (docket no. 17), and after de novo review of the pleadings and record in this case, it is **ORDERED** that:

1. The Report and Recommendation is **APPROVED** and **ADOPTED**;

2. The Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, is **DENIED** and **DISMISSED**;

3. Because there is no probable cause to issue a certificate of appealability, no certificate of appealability shall issue.

                                                       BY THE COURT:

                                                       /s/ Bruce W. Kauffman
                                                       **BRUCE W. KAUFFMAN, J.**